# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| BRAD A. DAVIS, on behalf of himself and a class of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>HENKEL CORPORATION and THRIVING BRANDS LLC,<br><br>    Defendants. | Civil Action No. 1:21-CV-782<br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Brad A. Davis ("Plaintiff") individually and on behalf of himself and all others similarly situated, brings this class action lawsuit against Defendants Henkel Corporation ("Henkel") and Thriving Brands LLC ("Thriving Brands") (collectively, "Defendants") based upon personal knowledge as to himself, the investigation of his counsel, and on information and belief as to all other matters.

## INTRODUCTION

1. This is a class action lawsuit against Defendants regarding the manufacture, distribution, and sale of Right Guard spray-on antiperspirant products that contain benzene, a known human carcinogen (the "Affected Products").[1]

2. "Antiperspirant body spray products are considered over-the-counter drugs and certain deodorant body sprays are considered cosmetics that are regulated by the U.S. Food and Drug Administration ("FDA")."[2]  The FDA has several safety and effectiveness regulations in

---

[1] Plaintiff reserves the right to amend this list if further investigation and/or discovery reveals that the list should be amended.
[2] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021); *See also* 21 C.F.R. § 352, *et seq.*

place that govern the manufacture and marketing of all antiperspirant and deodorant products, including safety data on its ingredients.[3]

3.      On November 3, 2021, Valisure, an independent pharmacy that analyzes the safety of consumer products, filed a citizen petition with the FDA detailing its findings that it detected high levels of benzene in many body spray products, including several of Defendants' Right Guard body spray antiperspirant products.   Valisure called for the FDA to recall all batches of Defendants' body spray antiperspirant products that contained benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") in violation of 21 U.S.C. § 351 and misbranded under Section 502 of the FDCA in violation of 21 U.S.C. § 352.

4.      Benzene is a known human carcinogen.  The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[4]  Similarly, the Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans.[5] Benzene exposure has been linked with acute lymphocytic leukemia, chronic lymphocytic leukemia, multiple myeloma, and non-Hodgkin lymphoma.[6]

5.      According to Valisure, because many of the products it tested did not contain detectable levels of benzene, it appears that benzene is not a requisite component of manufacturing

---

[3] *FDA Authority Over Cosmetics: How Cosmetics Are Not FDA-Approved, but Are FDA-Regulated*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/consumers/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated (last visited November 19, 2021).
[4] *IARC Monographs on the Identification of Carcinogenic Hazards to Humans: List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER, WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/list-of-classifications (last visited November 19, 2021).
[5] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited November 19, 2021).
[6] *Benzene and Cancer Ris*k, AMERICAN CANCER SOCIETY https://www.cancer.org/cancer/cancer-causes/benzene.html (last visited November 19, 2021).

or packaging body sprays.[7]  As such, "any significant detection of benzene should be deemed unacceptable."[8]

6.     David Light, Founder and CEO of Valisure stated that "[t]he presence of this known human carcinogen in body spray products regularly used by adults and adolescents in large volumes makes this finding especially troubling[.]"[9]

7.     The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels. Therefore, Plaintiff, by use of reasonable care, could not have discovered that the Affected Products were contaminated with benzene.

8.     Plaintiff and Class members purchased the Affected Products with the expectation that the products were safe, including free of carcinogens. Because Defendants sold products to consumers that contain dangerous levels of benzene, Plaintiff and the Class members were deprived of the benefit of their bargain.

9.     To prevent Defendants from selling misbranded, illegal, and dangerous products in the future, Plaintiff seeks injunctive relief including, but not limited to requiring Defendants to improve internal testing protocols and also requiring independent testing of their products to ensure that their body spray products are free of benzene before they are sold.

10.     Accordingly, Plaintiff brings this action on behalf of himself and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) breach of implied warranty; (iii) violation of Georgia's Fair Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq.*; (iv) violation of Georgia's Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370 *et seq.*; and (v) unjust enrichment.

---

[7] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[8] *Id.*
[9] *Id.*

## PARTIES

11.     Plaintiff Brad A. Davis is a resident and citizen of the state of Georgia.  For at least the last six years, Mr. Davis made numerous purchases of Right Guard aerosol antiperspirant, including most recently in November 2021.  Mr. Davis purchased the Affected Products from Walmart and Publix retail stores located in Cumming, Georgia. When purchasing the Affected Products, Mr. Davis reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendants that the products were properly manufactured, free from defects, and safe for their intended use. Mr. Davis relied on these representations and warranties in deciding to purchase the products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products from Defendants if he had known that they were not, in fact, properly manufactured, free from defects, or safe for their intended use.

12.     Defendant Henkel Corporation is a Delaware corporation with its principal place of business and headquarters located at One Henkel Way, Rocky Hill, Connecticut.  Henkel Corporation conducts business throughout the United States, including in this District.  From approximately 2006 until June 2021, Henkel Corporation created and/or authorized the false, misleading, and deceptive manufacturing, marketing, advertising, and distribution of the Affected Products.

13.     Defendant Thriving Brands LLC is a limited liability company with its headquarters located at 8170 Corporate Park Drive Suite 143, Cincinnati, Ohio 45242. Thriving Brands LLC purchased the Right Guard line of products, including the Affected Products, from Henkel Corporation in June 2021. Thriving Brands LLC creates and/or authorizes the false, misleading, and deceptive manufacturing, marketing, advertising, and distribution of the Affected Products.

4

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different than at least one Defendant.

15.     This Court has personal jurisdiction over Defendants because Thriving Brands LLC is headquartered in this State and Defendants conduct and transact business in the state of Ohio, contract to supply goods within the state of Ohio, and supply goods within the state of Ohio.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Thriving Brands LLC is headquartered here and Defendants conduct substantial business in this District.

## FACTUAL ALLEGATIONS

A.      **The Dangers of Benzene**

17.     According to the U.S. Centers for Disease Control and Prevention ("CDC"), the U.S. Department of Health and Human Services has determined that benzene causes cancer in humans. Similarly, the WHO and the IARC have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[10]

18.     The NIOSH and CDC identify "exposure routes" for benzene to include: "inhalation, skin absorption, ingestion, skin and/or eye contact."[11]

19.     The NIOSH and CDC identify "target organs" associated with human exposure to benzene to include: "eyes, skin, respiratory system, blood, central nervous system, bone marrow.[12]

---

[10] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[11] *NIOSH Pocket Guide to Chemical Hazards: Benzene*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/niosh/npg/npgd0049.html (last visited November 19, 2021).
[12] *Id.*

20.     The CDC warns that "[b]enzene works by causing cells not to work correctly. For example, it can cause bone marrow not to produce enough red blood cells, which can lead to anemia. Also, it can damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells."[13]

21.     As for "where benzene is found and how it is used," the CDC states that "[s]ome industries use benzene to make other chemicals that are used to make plastics, resins, and nylon and synthetic fibers. Benzene is also used to make some types of lubricants, rubbers, dyes, detergents, drugs, and pesticides."[14]

22.     The CDC has stated that ways in which people "could be exposed to benzene" include:

- Outdoor air contains low levels of benzene from tobacco smoke, gas stations, motor vehicle exhaust, and industrial emissions.

- Indoor air generally contains levels of benzene higher than those in outdoor air. The benzene in indoor air comes from products that contain benzene such as glues, paints, furniture wax, and detergents.

- The air around hazardous waste sites or gas stations can contain higher levels of benzene than in other areas.

- Benzene leaks from underground storage tanks or from hazardous waste sites containing benzene can contaminate well water.

- People working in industries that make or use benzene may be exposed to the highest levels of it.

- A major source of benzene exposure is tobacco smoke.[15]

---

[13] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited November 19, 2021).
[14] *Id.*
[15] *Id.*

23.      A 2010 study titled "Advances in Understanding Benzene Health Effects and Susceptibility" summarized the epidemiological studies of the carcinogenic effects of benzene exposure and an overview of the hematotoxic effects of benzene.[16]  The 2010 study concluded:

      a.  There is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion.

      b.  Exposure to benzene can lead to multiple alterations that contribute to the leukemogenic process, indicating a multimodal mechanism of action.

      c.  Benzene is a ubiquitous chemical in our environment that causes acute leukemia and probably other hematological cancers.

24.      The FDA currently recognizes the danger of benzene and, as a result, has claimed it should not be used in the manufacture of any component of a drug product due to its unacceptable toxicity effect.[17]

25.      Where the use of benzene or other Class 1 solvents is *unavoidable*, the FDA has stated that the levels should be restricted, and benzene is restricted under such guidance to 2 parts per million ("ppm").[18]

26.      Because many of the products Valisure tested did not contain detectable levels of benzene, it does not appear that benzene use is unavoidable for their manufacture.[19]  As such, "[a]ny significant detection of benzene should be deemed unacceptable."[20]

---

[16] Martyn T. Smith, *Advances in Understanding Benzene Health Effects and Susceptibility*, ANNUAL REVIEWS, Vol. 31:133-148 (April 21, 2010) https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646 (last visited November 19, 2021).
[17] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[18] *Id.*
[19] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[20] *Id.*

27.     The FDA regulates antiperspirants to ensure that they meet safety and effectiveness standards. *See* 21 CFR §§ 350.1.  The FDA has also identified acceptable active ingredients for products labeled as antiperspirant.  Benzene is not one of those acceptable ingredients.

28.     As such, the presence of this known human carcinogen in body spray products widely used by adults and children in large volumes makes the presence of benzene in body spray products especially troubling.

**B.      The Valisure Lab Report Identified High Levels of Benzene In Defendants' Products**

29.     Valisure analyzed 108 unique batches from 30 brands of deodorant and antiperspirant aerosol products.

30.     Valisure identified twenty-four body spray products or product line batches which contained levels of benzene at 2 ppm or higher, including the Affected Products:

| Brand | UPC | Lot | Expiration | Type | Description | API | Percent API | Average ppm | % St Dev |
|-------|-----|-----|-----------|------|-------------|-----|-------------|-------------|----------|
| Old Spice | 012044001912 | 11671458SQ | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.7 | 12% |
| Old Spice | 012044001912 | 11671458SB | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.4 14.1* | 8% |
| Secret | 037000711087 | 11721458SG | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.2 13.1* | 17% |
| Secret | 037000711087 | 11701458SH | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.1 | 16% |
| Tag | 850007395421 | M 21075 | Unknown | Deodorant | Midnight, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 14.1 | 28% |
| Secret | 037000711094 | 12181458SD | 08/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 12.5 | 12% |
| Sure | 883484002278 | (L)21175 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 11.1 6.41* | 14% |
| Equate | 681131346443 | 1E05 | 05/2023 | Antiperspirant | Dry Spray, Cucumber | Aluminum Chlorohydrate | 20.2 | 6.15 3.21* | 5% |
| Old Spice | 037000695707 | 246144504 | Unknown | Deodorant | Below Deck, Powder Spray, Feel Drier & Cleaner, Down Below, Fresh Air | N/A (Cosmetic Product) | N/A | 5.22 6.52* | 3% |
| Suave | 079400751508 | 07151AD14 | 07/2023 | Antiperspirant | 24 Hour Protection, Powder, Aerosol | Aluminum Chlorohydrate | 19.1 | 5.21 | 4% |

| Right Guard | 017000068060 | Q405410200 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 5.00 5.07* | 10% |
| Secret | 037000798842 | 1109145 8SN | 04/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 4.85 | 6% |
| Old Spice | 037000730347 | 1100145 8SC | 04/2023 | Antiperspirant | Sweat Defense, Stronger Swagger, Dry Spray, Sweat & Odor Protection | Aluminum Chlorohydrate | 23.5 | 4.54 | 24% |
| Brut | 827755070108 | (L)21155 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 4.13 | 7% |
| Sure | 883484002278 | 21172 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 3.59 | 35% |
| Old Spice | 012044001912 | 1263145 8SB | 09/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 3.34 | 16% |
| Right Guard | 017000068060 | Q610900732 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 2.61 | 16% |
| Secret | 037000798842 | 1199145 8SR | 07/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 2.58 | 20% |
| Tag | 854152008786 | 0252020203 | Unknown | Deodorant | Sport, Fearless, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.53 | 46% |
| Sure | 883484002278 | (L)21099 | 03/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 2.36 | 9% |
| Brut | 827755070085 | (L)21167 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 2.34 2.47* | 4% |
| Tag | 854152008762 | 0252035602 | Unknown | Deodorant | Sport, Dominate, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.30 | 36% |
| Suave | 079400785503 | 08091AD00 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.30 2.11* | 9% |
| Suave | 079400785503 | 08091AD02 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.24 | 6% |

31.     The *lowest* level of benzene found in Defendants' products listed in the chart above is 2.61 ppm (Right guard, Sport Antiperspirant), or 30.5% higher than the 2 ppm concentration limit for "unavoidable" uses.

32.     The *highest* level of benzene found in Defendants' products listed in the chart above is 5.00 to 5.07 ppm (Right Guard, Sport Antiperspirant), or more than 2.5 times the concentration limit for "unavoidable" uses.

33.     The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels.  Therefore, Plaintiff, by use of reasonable care, could not have discovered that the Affected Products were contaminated with Benzene.

34.     By marketing and selling their body spray products in the stream of commerce with the intent that their Affected Products would be purchased by Plaintiff and the Class Members,

Defendants warrant that the Affected Products are safe to use rather than adulterated body sprays containing a dangerous, cancer-causing chemical.

**C.**   **Defendants' False and Misleading Advertising Campaign**

35.     Benzene is not listed on the Affected Product labels as either an active or inactive ingredient, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Affected Products.  Below is a screenshot from the Right Guard website



36.     In fact, in a Safety Data Sheet for Right Guard Sport Aerosol Antiperspirant – Fresh, issued December 9, 2021, Defendants do not list benzene anywhere as a potentially hazardous ingredient, or in the list of OSHA permissible exposure limits for ingredients, or in the list of toxic and carcinogenic ingredients.[21]

---

[21] *Safety Data Sheet Revision Number: 001.2* (Issued: 12/09/2021), *Henkel,*

37.     As such, Defendants' advertising campaigns are false and misleading.   The presence of benzene in the Affected Products renders the Affected Products illegal and unfit for sale in trade or commerce.   Plaintiff would not have purchased the Affected Products had they been truthfully and accurately labeled.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendants' Affected Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

39.     Plaintiff Davis brings this action individually and on behalf of the following Georgia subclass:

> All persons who purchased one or more of Defendants' Affected Products in the state of Georgia for personal/household use within any applicable limitations (the "Georgia Subclass").

40.     Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entities in which Defendants or their parents and any entities in which Defendants have a controlling interest and their current or former employees, officers, and directors; and (3) individuals who allege personal bodily injury resulting from the use of Affected Products.

41.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and

---

https://mysds.henkel.com/SAP_GATEWAY/odata/SAP/YPSSWH_DOO_SRV//DocContentSet(Appid='YPSSW_S DSUK',Matnr=",Matnrcomp=",Subid='000000544611',Subidcomp=",Sbgvid='MSDS_B_US-US',Laiso='EN')/DocContentData/$value (last visited December 10, 2021).

their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendants' records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

42. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a. Whether the Affected Products contain benzene;

b. Whether Defendants knew or should have known that the Affected Products contain benzene;

c. Whether Defendants' representations and omissions, in their marketing, advertising, labeling, and packaging of the Affected Products, are misleading;

d. Whether Defendants' representations and omissions, in their marketing, advertising, labeling, and packaging of the Affected Products are reasonably likely to deceive;

e. Whether Defendants engaged in false and misleading advertising;

f. Whether Defendants had knowledge that those representations were false, deceptive, and/or misleading;

g. Whether Defendants' internal testing showed that their products contained benzene;

h. Whether Defendants violated the state consumer protection statutes alleged herein;

     i.   Whether Defendants breached their express warranties;

     j.   Whether Defendants were unjustly enriched;

     k.   Whether Defendants have the capability to implement changes to processes, practices, and policies regarding testing their products for contaminants, including, but not limited to benzene; and

     l.   The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

43.    Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class Members, purchased the Affected Products, suffered damages as a result of that purchase, and seeks the same relief as the proposed Class Members.

44.    Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because his interests do not conflict with the interests of the members of the Class, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and his counsel will fairly and adequately protect the interest of the members of the Class.

45.    Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendants because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

46.    Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by

individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendants; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I

**BREACH OF EXPRESS WARRANTY**
**(On behalf of Plaintiff and the Class (or alternatively, the Georgia Subclass) against Defendants)**

47.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

48.     Defendants marketed and sold their body spray products in the stream of commerce with the intent that their Affected Products would be purchased by Plaintiff and the Classes.

49.     In connection with the sale of the Affected Products, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that the Affected Products were body sprays that contained only those active and inactive ingredients listed on the Products' labels. Those active and inactive ingredients do not include benzene, a known human carcinogen. Defendants further expressly warrant that the Affected Products are body spray antiperspirant products, rather than adulterated body sprays containing dangerous chemicals.

50.     The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

51.     Plaintiff, by use of reasonable care, could not have discovered the breached warranty and realized the hidden increased risks and unreasonable dangers of using the Affected Products.

52.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and the Class members have been injured and harmed because they would not have purchased the products had they known the true facts regarding the benzene content.

53.     On December 14, 2021, prior to filing this action, Defendants were served with a pre-suit notice letter pursuant to U.C.C. §§ 2-313 and 2-607.

## COUNT II

### GEORGIA'S FAIR BUSINESS PRACTICES ACT
### GA. Code Ann. § 10-1-390 et seq.
### (On behalf of Plaintiff Davis and the Georgia Subclass against Defendants)

54.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

55.     Plaintiff Davis brings this count on behalf of himself and all members of the Class who purchased an Affected Product in Georgia.

56.     Plaintiff and Georgia Subclass members are "consumers," as defined by GA. Code Ann. § 10-1-392(a)(6).

57.     Defendants' conduct as alleged herein related to "trade and commerce" for "goods" and "services", as defined by GA. Code Ann. § 10-1-392(a)(28).

58.     Defendants advertised, offered, or sold goods or services in Georgia and engaged in trade or commerce directly or indirectly affecting the people of Georgia.

59.     Defendants engaged in unfair and deceptive acts or practices, in violation of GA. Code Ann. § 10-1-393(a), as described herein.

60.     Defendants intended to mislead Plaintiff Davis and Georgia Subclass members and induce them to rely on its misrepresentations and omissions.

61.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

62.     Under the circumstances, consumers had a reasonable interpretation of Defendants' representations and omissions.

63.     Defendants had a duty to disclose material facts to consumers, including but not limited to, that the Affected Products contain benzene, a known human carcinogen, and are unsafe for use. These material facts should have been disclosed because they were contrary to Defendants' representations about the Affected Products.

64.     Defendants' acts and practices caused or were likely to cause substantial injuries to consumers, which were not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

65.     The injury to consumers was and is substantial because it was non-trivial and nonspeculative; and involved a concrete monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

66.     Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers, Defendants

created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

67.     Defendants' business practices had no countervailing benefit to consumers or to competition.

68.     Defendants are presumed, as a matter of law under GA. Code Ann. § 10-1-392(b), to have intentionally violated the Georgia Fair Business Practices Act because it knowingly sold goods or services in the manner and of the nature advertised or offered in violation of this statute.

69.     Defendants acted intentionally, knowingly, and maliciously to violate Georgia's Fair Business Practices Act, and recklessly disregarded Plaintiff's and Georgia Subclass members' rights.

70.     As a direct and proximate cause of Defendants' deceptive acts and practices, Plaintiff Davis and the Georgia Subclass members have been injured and harmed because they would not have purchased the Affected Products on the same terms if they knew the true facts regarding the benzene content.

## COUNT III

**GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**GA. Code Ann. § 10-1-370 et seq.**
**(On behalf of Plaintiff Davis and the Georgia Subclass against Defendants)**

71.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

72.     Plaintiff Davis brings this count on behalf of himself and all members of the Class that purchased an Affected Product in Georgia.

73.     Defendants are "person[s]" as defined by GA. Code Ann. § 10-1-371(5).

74.     Defendants advertised and sold the Affected Products in Georgia and engaged in trade or commerce directly or indirectly affecting the people of Georgia.

75.     Defendants engaged in unfair and deceptive acts or practices, in violation of GA. Code Ann. § 10-1-372(a)(5), (7), (9), and (12) as described herein.

76.     Defendants failed to disclose material facts to consumers in advertising and on the Affected Product labels, including but not limited to, that the Affected Products contain benzene, a known human carcinogen, and are unsafe for use. The labels for the Affected Products did not warn consumers that benzene was present, and that as a result, the Affected Products were of a particular standard, quality, or grade when they were of another.

77.     Additionally, Defendants failed to disclose that the Affected Products contained benzene, and therefore advertised the products with intent not to sell them as advertised.  This conduct created a likelihood of confusion or of misunderstanding.

78.     Defendants knew or should have known that its conduct violated Georgia's Uniform Deceptive Trade Practices Act.

79.     Defendants had a duty to disclose material facts to consumers, including but not limited to, that the Affected Products contain benzene and are unsafe for use. These material facts should have been disclosed because they were contrary to Defendants' representations about the Affected Products.

80.     Defendants acted intentionally, knowingly, and maliciously to violate Georgia's Fair Business Practices Act, and recklessly disregarded Plaintiff's and Georgia Subclass members' rights.

81.     Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers, Defendants created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

82.     As a direct and proximate cause of Defendants' deceptive acts and practices, Plaintiff Davis and the Georgia Subclass members have been injured and harmed because they would not have purchased the Affected Products on the same terms if they knew the true facts regarding the benzene content.

## COUNT IV

### UNJUST ENRICHMENT
### (On behalf of the Plaintiff and the Class (or alternatively, the Georgia Subclass) against Defendants)

83.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

84.     Plaintiff and Class members conferred benefits upon Defendants. Plaintiff and Class members paid money for Defendants' worthless and defective Affected Products.

85.     Defendants have unjustly retained the benefits conferred upon them by Plaintiff and Class members.

86.     Defendants retained those benefits under circumstances that make it inequitable for Defendants to retain such benefits. Specifically, Defendants retained those benefits even though Defendants' Affected Products contain benzene and are unfit and unsafe for human use. If Plaintiff and Class members had known the true nature of Defendants' Affected Products, they would not have purchased the products. Plaintiff and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

87.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the proposed Classes, prays for relief

and judgment against Defendants as follows:

     a.     Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class Counsel;

     b.     Awarding Plaintiff and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

     c.     Awarding Plaintiff and the Classes appropriate relief, including but not limited to actual damages;

     d.     For declaratory and equitable relief, including restitution and disgorgement;

     e.     For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

     f.     Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

     g.     Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

     h.     Awarding pre-judgment and post-judgment interest;

     i.     For punitive damages; and

     j.     Granting any other relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: December 16, 2021              Respectfully submitted,

/s/ Joseph J. Braun
Joseph J. Braun (0069757)
Richard S. Wayne (0022390)
**STRAUSS TROY**
150 E. 4th Street, 4th Floor
Cincinnati, Ohio 45202
Telephone: 513-621-2120
Facsimile: 513-241-8259
Email: jjbraun@strausstroy.com
      rswayne@strausstroy.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich (*pro hac vice* to be filed)
Courtney E. Maccarone (*pro hac vice* to be filed)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
      cmaccarone@zlk.com

*Counsel for Plaintiff*